Good morning, and may it please the Court. I'm Peter Henderson. I represent Charles Hollman. The Apprendi rule is a bright-line rule, and it applies to this case. Any fact that increases the penalty for a crime must be submitted to a jury and found beyond reasonable doubt. We know that the penalty on a revocation of supervised release really is a penalty tied to the original crime. It's not new conduct. We're not punishing new conduct. We are imposing or modifying the sentence for the original crime. But supervised release revocation is not a criminal proceeding. Right. Just like a sentencing hearing is not a criminal proceeding in the sense that the Sixth Amendment might talk about it. So at a sentencing hearing, a judge can find facts by a preponderance of the evidence. No, the sentencing hearing is part of the criminal proceeding. You would never argue that a defendant or concede that a defendant doesn't have a right to counsel at the sentencing proceeding or the right, all of the usual rights that attach to a criminal proceeding. Well, and so the right that we're talking about here, because the Sixth Amendment has a number of rights, and the Apprendi line of cases deals with the jury trial right under the Sixth Amendment. So we're not talking about the right to counsel. We're talking about the jury trial right. Right, but there's no right to a jury in a supervised release proceeding. And there's no right to a jury at sentencing either. That's the appropriate comparator because what's happening at a revocation hearing is... There's fact-finding going on about the grounds for revocation as well as the appropriate penalty. That's right. So it's not just a sentencing determination. No, it is because the authority that the district court has to conduct a revocation proceeding and to sentence on a revocation proceeding comes from the original conviction. What the district court does at a revocation hearing is hears arguments. There's a petition to essentially modify the sentence. The sentence originally was a term of supervised release of this length. There's been a petition to say, this sentence needs to be modified and imprisonment substituted for a portion of this supervised release because there's been a violation. And that's the same type of question that a district court might encounter at sentencing where the government says, we've proved this drug amount, but actually he's responsible for a much greater quantity. That wasn't submitted to a jury, but under the guidelines that's And so the jury trial right for those findings of facts doesn't exist. What's the authority for construing a supervised release revocation as akin to a sentence modification? Isn't it really more appropriately conceptualized as sort of implementation of the conditions of supervised release and sanctions for their violation? I mean, the court has continuing responsibility over that supervised release phase, but it's more appropriately characterized as sort of an administrative proceeding rather than a criminal proceeding. Yeah, I think you could conceptualize. I don't think that's inconsistent with our position because the question behind it all is, what authority does the judge have once we get to sentencing? And what the Supreme Court has said is that the authority to impose a sentence, this is the Johnson case, comes from the original crime. And so nobody disputes if this was just a regular revocation. Judge Myerscough couldn't look at this case and say, all right, class C felony, it's two years, but I'm going to give you four because I gave you seven years of supervised release. I'm going to modify this. That's just not permissible. That exceeds the scope of the judge's authority. And so the question under Apprendi is not, what are the procedures that we use to make findings of fact? It's, what does the jury's verdict authorize the judge to do? Because the main Sixth Amendment concern was a reservation of power in our juries rather than allocating that power to judges. But you're not reading 3583E, though, in isolation from 3583K, right? Because 3583K, it's in the U.S. Code at the time of all this going on, too, right? Right. So at the time of sentencing, it's there. And so when you're focused on, well, there's the two-year class C limitation, but isn't the defendant also aware of K? Sure. And so, again, when we think about Apprendi and a length of time... So it's really the mandatory nature of what follows, right? Essentially what... It's the five-year mandatory minimum that is imposed without a jury finding. That's your issue. That's correct. And what Congress did was essentially create two penalties for the same crime. It's a penalty for the original crime. And this is what California did in the Cunningham case, was they said, we've got an upper term and we've got a middle term. And we're just saying the upper term is the statutory maximum. You're on notice of it. You can be sentenced under it. But judges shouldn't impose that unless they make findings of fact that would elevate your sentence into that term. And the Supreme Court said, no, that violates Apprendi. You can't have two different statutory ranges and leave it up to the judge to decide which one to apply. That power is reserved in the jury. And I think this case is a good example of that. When Mr. Holman was charged originally, he faced up to 10 years imprisonment and up to a term of supervised release of life. And for a violation of supervised release, up to two years under 3583E3. What happens with this factual finding at revocation is the judge could put Mr. Holman in prison for the rest of his life based only on a finding of fact by a judge, by a preponderance of the evidence. But there's no, I mean, that's, I don't, I doubt that. Right? I mean, I know what you're a supervised release violation led to the re-imprisonment of an individual for time well beyond the statutory maximum for the underlying offense. Don't you think we'd have a problem with that? I hope you would have a problem with that. But that's the same issue that we've got here, where, so let's say Congress says under 3583E3. No, you have a five year, right, which comes under the seven year term of supervised release that he got. But the judge. This happens to be a mandatory term of five. Right, but he faced up to two years. I mean, the maximum term of imprisonment for violating supervised release without an additional finding is two years. And that's how statutory maximum is defined in Blakely. It's what is the maximum term of imprisonment that a judge can impose without further findings? What does the jury's This is akin to a sentencing. The judge is entitled to make findings of fact by preponderance of the evidence. That's not the question. The question is ultimately what sentence can the judge impose because it's based on the jury's verdict. The other problem with construing this statute to allow the judge to do this is it does raise double jeopardy problems because this is expressly a penalty for new conduct, which is what the Supreme Court said. We shouldn't conceive of supervised release this way. It's a penalty for the old conduct to avoid that double jeopardy question. If we premise a five year mandatory minimum sentence rather than a two year maximum sentence on a finding of new criminal conduct, we're going to have double jeopardy concerns because Mr. Holman is currently being prosecuted for the new conduct in a separate criminal case. That's true in every drug case, though, where you revoke and you re-imprison because somebody is back to the old ways of dealing drugs. It's new criminal conduct. Right, but their original conviction authorized a maximum term of supervised release of whatever section 3583 E3 provided. So there's already the authorization. And so we have it might be a legal fiction. I don't know. But the penalty on the other provision, K is in existence all along. It's E as supplemented by K, given the nature of the offense and the offender. So the analogy is to look at Elaine. And Elaine, the penalty is five to life. That's what the jury decided. And if you brandish a firearm, then it's seven to life. And certainly at the time Mr. Elaine brandished a firearm, he knew that there were those two different penalties. The question isn't what the defendant was on notice of. That's a pertinent consideration in this line of cases. The question, though, is what the jury found and what the jury authorized. And so even though it might be clear to everybody at sentencing, this guy brandished a firearm, the mandatory minimum can't be seven years in that case. Even though it was on the books, we have a scheme under 924C where it's five to life, the important thing is those facts have to be found by a jury. It's not exclusively a notice question. Your argument calls into question all judicial fact-finding at supervised release. No, not at all. Our argument is about the authority that the district judge has to sentence and where that authority comes from. In almost every case that doesn't implicate 3583K, the district judge has the authority to revoke a term of supervised release and impose a term of imprisonment based on the original conviction. Those facts alone that were either... Up to and including the maximum supervised release term. That's right. And so in this case, that's the definition of what statutory maximum is. When Mr. Holman pleaded guilty, what was the statutory maximum term of imprisonment that could be imposed on supervised release without any further findings of fact? That's the Blakeley standard, and the answer to that is two years. There was notice that 3583K exists, but what Congress did essentially was create a new criminal offense and placed it in the supervised release statute so that a defendant doesn't have any of these constitutional rights that you'd have at trial. Instead, it's just proof by a preponderance of the evidence. I'm well over my time, but maybe I can have one more. Mr. Walters. May it please the court. Greg Walters on behalf of the United States. The government is asking this court to depart from its sister circuit in the 10th Circuit and affirm the judgment of the district court in this case for two reasons. First, the jury trial right and companion due process right underlying Apprendi and the successor cases do not apply to revocation proceedings. Second, even assuming Apprendi were to apply, the judge's factual findings in this case did not alter the prescribed range of penalties authorized by the offense of conviction. To your point, Judge Sykes, as far as Apprendi not applying to revocation, historically, case law and history and precedent show that the Sixth Amendment applies to criminal proceedings. In Apprendi, that was explained as everything from the beginning, middle, and end. Indictment, jury trial, judgment, and by judgment, implying the sentence. The Sixth Amendment right to a jury trial ends at judgment. There is simply no Supreme Court or circuit court case from this circuit or any other that I'm aware of that would permit this court to extend the Sixth Amendment jury trial right into a revocation proceeding. And the rule of Apprendi does not exist separate from the Sixth Amendment. It is predicated on the Sixth Amendment. Mr. Walters, can you respond to one aspect of Hayman that I'd like to hear your view on? 3553E, just by its terms, sets the maximum terms of re-imprisonment for supervised release violations based upon the severity of the underlying crime. So you go through that and you figure out is it Class A, Class B, Class C, as you well know. 3583K is different than that, right? It's focused on new conduct as opposed to the severity of the original one. Is that difference of any legal significance in your view? No, for a couple reasons. First, I think 3583E3, subsection E3, and K must be read on equal footing. In pari passo or whatever the Latin term is. And they need to be read in conjunction. So let's start with E3. The first sentence in E3 says that a judge is authorized to re-impose a term of imprisonment or to re-imprison someone for up to the maximum term of supervised release authorized by the offense of conviction. It then provides for an exception for revocations under this paragraph of setting the maximum re-imprisonment range based on the class of felony. 3583 subsection K does not contain that exception. It says if a five-year term of supervised release is authorized by at least five years by the original conviction, there's no exception here. If you turn around and commit a specific type of offense on supervised release and it was clearly within, we believe, Congress's prerogative to say there are certain violations on supervised release that are more serious that will result in a higher re-imprisonment range. That a person who commits this type of violation, in this case, the knowing possession of child pornography, poses a greater threat to society and therefore will be re-imprisoned for at least five years. That re-imprisonment term of at least five years was authorized by Mr. Holman's original conviction because under the first sentence of 3583 K, Your Honor, the court had to impose at least five years of supervised release and could have gone up to life. He then violates his supervised release in a certain manner as set forth in the second sentence of subsection K and therefore under the third sentence he gets five-year term of imprisonment. So getting back to my two original points, first, Apprendi doesn't apply, but even if it did, there is no distinction here between a core and aggravated offense such as in Apprendi. The offense was the offense. Plainly stated, there was no range that the court could have imposed other than five years up to life once it found that he committed this violation of supervised release in this way. And had the court not made the findings, if the court were unable to find by a preponderance of the evidence that he didn't knowingly possess child pornography, there would be no sentence to impose at all. So when we said that the judge, even if Apprendi did apply, that her findings of fact did not alter the range of punishment, that's just clearly the case because there is no circumstance under which she could have imposed any percentage. But you're necessarily saying that that's also true in a lien. That scenario, right, when you're dealing with statutory, mandatory minimums, I'm sure it's primary offense conduct. It's not sentencing. The distinction, though, between when we're talking about a core offense and an aggravated offense is what a lien's talking about. So let me give you an example. We see this commonly in drug cases. What's the drug amount? That's the aggravating factor. Is it more than 28 grams of cocaine base or is it less than 28 grams? But the core offense is the distribution of that cocaine base. We have no qualms with, obviously, under the rule of Apprendi and the line of cases, that this standard of proof beyond a reasonable doubt must apply in a criminal proceeding, again, to both the core offense and the aggravating factor that increases the sentence. Here, there is no core offense or aggravating offense. It is the supervised release violation of knowing possession of child pornography. Once the court made that finding by a preponderance of evidence, whether he did it or he didn't do it, that resulted in the required sentence of five years to life. There was no alternative under the facts of the offense that he committed on supervised release for the court to impose the lower threshold, whereas in the Apprendi line of cases, there is that alternative. This may be outside the scope of the appeal, but do you know whether at his plea allocution he was advised of the 3583? He was not. I did look at the transcript. That's not being argued back and forth here. Is that of any concern to you? I think it's certainly not an Apprendi issue. At most, a due process notice issue, but the fact that this was in the statute, I think, would take away from any due process. He was advised, though, that he could be re-imprisoned for the maximum term of supervised release, if I recall correctly, from when I authorized by the offense of conviction, if I recall correctly, from reading the plea colloquy, but it's been a bit of time. What if this were all handled administratively within the executive branch? If Congress were to say, we don't want to bother Article III judges with supervised release revocation proceedings anymore, we're going to set up an executive branch tribunal to implement the supervised release part of the original sentence and bring all supervised release offenders before some administrative tribunal for a truncated hearing and imposition of sanction for the violation. Would that have any constitutional problems associated with it? I'm thinking back to think that that's largely indistinguishable from the parole violations of Morris E.V. Brewer, in which the court said that the Sixth Amendment right, that this isn't a criminal proceeding. So to answer your question, at least under the Sixth Amendment and Apprendi, I don't see how that would be problematic at all, Your Honor. That would just be reverting to a system that Congress disposed of in 1986 with the Sentencing Reform Act. So if I could briefly touch upon, too, counsel's argument that this creates a potential double jeopardy issue. We just firmly but respectfully disagree with Mr. Henderson on that point. The Supreme Court is very clear that we are to take the court at its word. And at Johnson against the United States, they addressed this very issue, and they said no. The re-imprisonment for a violation of supervised release ties back to the offense of conviction. And so it is not a separate punishment for a new offense. It is a re-imprisonment based on the original offense of conviction. So for that reason, there's not a double jeopardy concern. And so, Judge Scudder, to go back to your original question of bringing up a point in Hammond, I think the dissent got it exactly right on that point about double jeopardy. We need to take the Supreme Court at its word. Absent that, there's bedlam. I don't know if the judge said that exactly, but that was the point that the court made. So back to our two points, again, Judge Sykes, as you pointed out, or at least in your question, I know you haven't ruled, but the Sixth Amendment right to a jury trial does not apply to revocation. Second, even if it did, the judge's findings by a preponderance in this case did not alter the range of penalties authorized by the offense of conviction. So for those reasons, this statute, as applied to Mr. Holman, is not unconstitutional. He was re-imprisoned within the range authorized by his offense of conviction, which was five years to life. And so there is no apprendee violation in this case. All right. Thank you. Mr. Henderson, we kept you going. You can have some extra time. Two minutes. Thank you. I want to respond to the government's two main points. The government says that the jury trial right of the Sixth Amendment does not apply to revocation proceedings. It also does not apply to sentencing proceedings. That's not a distinguishing factor between Apprendi, Elaine, et cetera, Booker. The government also says that the judge's findings did not alter the prescribed statutory range. They absolutely did. They established the range. Mr. Holman was charged in the petition with two violations of supervised release. One was the knowing possession of child pornography, and one was a failure to abide by the rules of the computer Internet monitoring program. The first violation, upon a finding of fact by the district judge by preponderance of the evidence, created a statutory range of five years to life. The second violation would be up to two years. So both, if one is not found and the other is found,  this ultimately is about authority. Supervised release is not exactly parole. But if we think about the parole context, if a jury's verdict authorizes a certain term of imprisonment and parole, the parole board can certainly exercise full discretion to revoke parole under the protections of Morrisey. But what the parole board couldn't do is make a new finding of fact that extends the portion of parole beyond that that was originally authorized. And that's what happened here. The judge made a finding of fact that it creates a new statutory range for what is concededly a penalty for the original offensive conviction. Thank you very much. All right, thank you. Our thanks to both counsel. The case is taken under advisement.